Page 1 of 14

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SONNY WEAVER, JR.,
    Plaintiff,

vs.                                            Case No.: 3:21cv131/MCR/EMT

SERGEANT DERRICK PURVIS,
    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Sonny Weaver, Jr. (Weaver), an inmate of the Florida Department of Corrections (FDOC) proceeding pro se and in forma pauperis, initiated this action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 (*see* ECF No. 1). The court screened the Complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A, and determined that Weaver's factual allegations failed to state a plausible claim for relief against one or more of the named Defendants (*see* ECF No. 9). The court provided Weaver an opportunity to correct the pleading deficiencies by filing an amended complaint (*see id.*). Weaver has now filed an Amended Complaint (ECF No. 10). Upon review of Weaver's Amended Complaint, it is apparent that his factual allegations fail to state a plausible claim against the only named Defendant. It likewise is clear Weaver cannot cure the deficiency by filing another amended complaint. Therefore, the undersigned recommends dismissal of this case.

I.   BACKGROUND

Weaver names Sergeant Derrick Purvis, a correctional officer at Walton Correctional Institution, as the sole Defendant (ECF No. 10 at 1–2).[1] The following factual allegations are taken from Weaver's Amended Complaint (*id.* at 5–6). On October 27, 2020, between 8:00 and 9:00 a.m., Weaver was awakened when an insect crawled into his ear. Upon examining his ear, Weaver discovered blood coming out and "something going in" (*id.* at 5). Weaver panicked and "started yelling for a medical emergency" (*id.*). Defendant Sergeant Purvis responded to Weaver's cell, watched him cry for ten to fifteen minutes, and then walked away. Approximately thirty to forty minutes later, Weaver was escorted from his cell to a medical examination room.[2] Weaver told the nurse (Nurse Peris) that there was an insect inside his ear. Without looking into Weaver's ear, the nurse told Weaver that insects could not live inside his body (*id.*). Weaver was returned to his cell "still in pain" (*id.*).

---

[1] Weaver named two members of the medical staff at Walton C.I. (Nurse Peris and ARNP Foresster) as Defendants in his original Complaint, but he states he is dropping his claims against them (*see* ECF No. 10 at 6).

[2] Weaver initially alleged that Purvis stood at his cell door "for about 10 minutes" (ECF No. 1 at 4). It thus is clear Weaver was seen by a medical professional less than an hour after Purvis first appeared at his cell.

Several hours later, at approximately 5:00 p.m., Weaver declared another medical emergency. A correctional officer responded to Weaver's cell and notified Defendant Purvis. Purvis instructed the officer not to notify medical staff and instead instruct Weaver to submit a sick call request. Weaver submitted a sick-call request (*see* ECF No. 1 at 5).

Also on October 27, 2020, Defendant Purvis placed Weaver on 72-hour property restriction for, as Weaver describes, "yelling for a medical emergency all morning" (*see* ECF No. 10 at 9 (Weaver's informal grievance)). During that 72-hour period Weaver was deprived of soap, deodorant, toothpaste, toothbrush, Bible, mattress, blanket, legal work, and clothing in "cold weather" (*id.* at 7).

The next day, on October 28, 2020, Weaver declared several medical emergencies (ECF No. 10 at 5–6). Defendant Purvis denied Plaintiff's requests for emergency medical treatment. Weaver then declared a mental health emergency. Mental health staff responded to Weaver's cell. Weaver attempted to persuade the mental health staff to contact the medical department, but staff refused. Weaver submitted another sick-call request.

On October 29, 2020, a nurse (Nurse Moore) examined Weaver's ear. The nurse stated she saw "three holes where something had bitten threw [sic]" (ECF No.

10 at 6). The nurse provided Weaver with antibiotic ear drops (*see id.*; *see also id.* at 8 (Weaver's informal grievance)).

Weaver submitted another sick-call request on November 2, 2020 (ECF No. 10 at 11 (Weaver's sick-call request)). Weaver indicated that the nature of his problem was medical (*id.*). Weaver described his problem as follows:

> I've got a [sic] insect inside my body freely roaming. It has shedded [sic] and burrows itself inside my throat. It's been stinging & biting me on my organs in my body such as my intestines & bladder, also parts of any organs that's around it. I've got scabs to show everywhere it either tried to bit out or stung me. It started on 10/27/20 but the insect entered my body on 10/26/20.

(ECF No. 10 at 11 (Weaver's sick-call request)). That day, a nurse (Nurse Duff) directed Weaver's sick-call request to the mental health department (*see* ECF No. 10 at 10 (Weaver's informal grievance), 11 (Weaver's sick-call request)). A licensed mental health care provider (B. Cox) went to Weaver's cell the next day (November 3) (*see id.*). Weaver refused mental health services and indicated that his problem was medical in nature (*see id.*).

Weaver claims that Defendant Sergeant Purvis violated his Eighth Amendment rights by placing him on property restriction and depriving him of necessary medical treatment (ECF No. 10 at 7). As relief, he seek compensatory and punitive damages for "extreme physical pain" and "probibility [sic] of loss of

hearing" (*id.*).  Weaver also seeks an injunction requiring Defendant Purvis to provide an MRI from a hospital to determine what is in his body (*id.*).

## II.     RELEVANT LEGAL STANDARDS

### A.     Statutory Screening Standard

Because Weaver is a prisoner proceeding in forma pauperis, the court must dismiss this case if the court determines it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).  The statutory language "tracks the language of Federal Rule of Civil Procedure 12(b)(6)," therefore, dismissals for failure to state a claim are governed by the same standard as Rule 12(b)(6).  *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997).  The allegations of the complaint are taken as true and construed in the light most favorable to the plaintiff.  *See Davis v. Monroe Cnty. Bd. of Educ.*, 120 F.3d 1390, 1393 (11th Cir. 1997).  The court may consider documents attached to a complaint or incorporated into the complaint by reference, as well as matters of which a court may take judicial notice.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Saunders v. Duke*, 766 F.3d 1262, 1272 (11th Cir. 2014).

To survive dismissal at the screening phase, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation marks and citation omitted). And "bare assertions" that "amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation marks and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court

should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

### B.  Eighth Amendment Standards

The Eighth Amendment prohibits the "inflict[ion]" of "cruel and unusual punishments." U.S. Const. amend VIII. Under this Amendment, the "[f]ederal and state governments . . . have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration." *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991). As particularly relevant here, the Supreme Court has held that prison officials violate the bar on cruel and unusual punishments when they display "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

A deliberate-indifference claim entails both an objective and a subjective component. *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). First, the inmate must establish "an objectively serious medical need"—that is, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"— that, "if left unattended, poses a substantial risk of serious harm." *Id.* (alteration adopted) (quotation omitted). Second, the inmate must prove that prison officials acted with deliberate indifference to that need by showing (1) that they had

"subjective knowledge of a risk of serious harm" and (2) that they "disregard[ed]" that risk (3) by conduct that was "more than mere negligence." *Id.*

The "cruel and unusual punishments" clause of the Eighth Amendment also applies to the conditions of a prisoner's confinement. *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). To establish a violation of the Eighth Amendment, a prisoner must first show that a condition is an objectively "cruel and unusual deprivation," and second, that the officials responsible for the condition had the subjective intent to punish. *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000).

As for the first element, the challenged condition must be extreme and "pose an unreasonable risk of serious damage to [a prisoner's] future health" or safety. *Helling v. McKinney*, 509 U.S. 25, 35 (1993). The Eighth Amendment thus guarantees that prisoners will not be "deprive[d] . . . of the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. Yet if prison conditions are merely "restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

"The challenged condition must be extreme": the prisoner must show, at the very least, "that a condition of his confinement poses an unreasonable risk of serious damage to his future health or safety." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (internal quotation marks and citation omitted). As part of the

court's analysis, the court must determine "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Id.* (emphasis in original). In evaluating an Eighth Amendment claim, the court considers both the severity and the duration of the prisoner's exposure to the conditions. *Id.* at 1295. "[A] prisoner's mere discomfort, without more, does not offend the Eighth Amendment." *Id.* at 1295.

The second part of the two-part analysis is the "subjective component." *Chandler*, 379 F.3d at 1289. "The prisoner must show that the defendant prison officials 'acted with a sufficiently culpable state of mind' with regard to the condition at issue." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The proper standard is that of deliberate indifference. *Chandler*, 379 F.3d at 1289 (citing *Wilson v. Seiter*, 501 U.S. 294, 303 (1991)). Negligence does not suffice to satisfy this standard. *Chandler*, 379 F.3d at 1289 (citing *Wilson*, 501 U.S. at 305). In defining the deliberate indifference standard, the Supreme Court stated:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Case No.: 3:21cv131/MCR/EMT

III.   DISCUSSION

   A.   **Medical Claim**

Weaver claims that about forty-five minutes passed between the time Defendant Sergeant Purvis responded to his cell on the morning of October 27 (when Weaver first declared a medical emergency) and the time Weaver was taken to see a nurse. This relatively short delay in providing medical attention for Weaver's symptoms (i.e., a painful, bloody ear) was not objectively unreasonable; and even if it was, Weaver does not allege any facts suggesting that the delay was attributable to deliberate indifference on Defendant Purvis' part.

Weaver also claims that Defendant Purvis was deliberately indifferent by refusing his requests for emergency medical treatment for several hours after he was seen by Nurse Peris on October 27, and throughout the next day. Institutional staff who are not medical providers are not liable when they rely on the medical expertise of medical staff. *See Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1050 (11th Cir. 2014) (holding that the law does not require head of correctional institution to ignore the determination and recommendation of contracted medical staff); *see also Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (a claim of medical indifference cannot generally be against non-medical personnel, unless they personally involved

themselves with a denial of treatment or deliberately interfered with the medical treatment).

Here, Defendant Sergeant Purvis reasonably relied on the nurse's assessment that Weaver did not require emergency medical treatment for his ear. Further, the sick-call process was available for Weaver to request non-emergent medical treatment; indeed, Weaver utilized this process and was seen by another nurse on October 29. That nurse provided antibiotic ear drops and sent Weaver back to his cell, which suggests Weaver's ear condition did not present a medical emergency.

Weaver's factual allegations fail to state a plausible Eighth Amendment claim against Defendant Purvis regarding the alleged deprivation of medical treatment. Therefore, the undersigned recommends dismissal of this claim.

**B.     Conditions Claim/Property Restriction (a/k/a strip-cell status)**

Weaver alleges Defendant Purvis deprived him of soap, deodorant, toothpaste, toothbrush, Bible, mattress, blanket, legal work, and clothing for 72 hours as punishment for his continuing to yell that he was having a medical emergency. Weaver alleges this exposed him to "cold weather."

Mere discomfort for a 72-hour period is legally insufficient to suggest that the property restriction deprived Weaver of the "minimal civilized measure of life's necessities" or that the conditions of his confinement posed an unreasonable risk of

serious harm to his future health or safety. *See Chandler*, 379 F.3d at 1289 ([A] prisoner's mere discomfort, without more, does not offend the Eighth Amendment.") (citation omitted); *see also, e.g., Woodson v. Whitehead*, 673 F. App'x 931, 932 (11th Cir. 2016) ("Confinement without clothing (other than boxers), bedding, or hygienic materials for 72 hours during the months of April and August in Florida is not the type of extreme prison conditions that create a substantial risk of serious harm"); *O'Connor v. Kelley*, 644 F. App'x 928, 932 (11th Cir. 2016) (prison officials' decision to place prisoner on strip-cell status did not violate prisoner's Eighth Amendment right against cruel and unusual punishment, even if prisoner felt uncomfortably cold while on strip-cell status, where prisoner alleged no details about actual temperature of his cell or about degree of cold he experienced, and prisoner did not report any medical problems to prison officials). *Cf. Chandler v. Baird*, 926 F.2d 1057, 1059 (11th Cir. 1991) (prisoner was entitled to have trier of fact determine whether conditions of administrative confinement, principally with regard to the cell temperature and the provision of hygiene items, violated the minimal standards required by Eighth Amendment, where prisoner was confined on "strip cell" for *sixteen days in "ice cold" cell with temperature as low as 60 degrees* with no clothes except undershorts and with only a plastic-covered mattress without bedding; *there was filth on cell's floor and walls; prisoner was deprived of toilet*

*paper for three days and running water for two days*; prisoner lacked soap, toothbrush, toothpaste, and linens; and cell was earlier occupied by inmate afflicted with HIV virus); *Davis v. Crew*, No. 4:13cv504/MW/CAS, 2014 WL 961201, at *1, 8–12, (N.D. Fla. Mar. 11, 20214) (denying qualified immunity on plaintiff's Eighth Amendment claim regarding placement on property restriction for a total of *18 days for no penological reason* and temperatures inside cell were between 45 and 55 degrees during that 18-day period).

Moreover, even if Weaver suffered more harm than mere discomfort from the 72-hour property restriction, which he does not allege, Weaver does not allege that Defendant Purvis was aware of any facts from which the inference could be drawn that Weaver faced a substantial risk of serious harm from the temporary property restriction, let alone that Purvis actually drew that inference.

Weaver's factual allegations regarding the 72-hour property restriction fail to plausibly satisfy the objective and subjective components of the deliberate indifference standard. Therefore, Weaver has not stated a plausible claim for relief on this Eighth Amendment claim.

IV. CONCLUSION

Weaver's factual allegations fail to state a plausible claim for relief against Defendant, and there is no indication that providing Weaver another opportunity to

amend his complaint would produce a pleading which states a plausible constitutional claim. Therefore, the undersigned recommends that Weaver's claims be dismissed, pursuant to §§ 1915(e)(2)(B)(ii) and 1915(b)(1).

Accordingly, it is respectfully **RECOMMENDED**:

1. That Plaintiff's claims be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

2. That the clerk of court be directed to enter judgment accordingly and close this case.

At Pensacola, Florida this 27th day of August 2021.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  **Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control**.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.

Case No.:  3:21cv131/MCR/EMT